FOR PRINT PUBLICATION



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| ALVERTIS ISBELL d/b/a ALVERT MUSIC, <br>     Plaintiff, <br><br> v. <br><br> DM RECORDS, INC., <br>     Defendant. | Case No. 4:07-cv-146 |

## MEMORANDUM OPINION & ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS

Before the court are the following:

1. Defendant, DM Records, Inc's Motion to Dismiss for Lack of Standing and Brief in Support (de # 17);

2. Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Standing (de # 18); and

3. Reply to Plaintiff's Response to Motion to Dismiss for Lack of Standing (de # 19).

In its Motion, the Defendant asks the court to dismiss the Plaintiff's complaint because the Plaintiff lacks standing to assert the claims contained therein. At the center of this dispute is an assignment of copyright ownership relating to two songs from the Plaintiff to a third party. The Defendant asserts that the assignment divested the Plaintiff of standing to pursue this action; the Plaintiff disagrees. Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Defendant's Motion should be GRANTED.

### I. BACKGROUND

In this civil action, Alvertis Isbell seeks a declaratory judgment that Alvert Music is the rightful owner of two musical compositions: "Dazzey Duks" and "Whoomp! (There It Is)." The

events giving rise to this suit begin with business conducted by two companies, Alvert Music and Bellmark Records, each run by Isbell. Bellmark was purportedly a record company, owning sound recordings. (Complaint ¶ 10.) Alvert Music is, and has been, a music publishing company, which owns musical compositions and not sound recordings. (*Id*. at ¶ 11.)[1]

During the early 1990's, Bellmark entered into agreements to obtain the rights to the musical compositions for "Dazzey Duks" and 50% of "Whoomp! (There It Is)" for its affiliated publishing company, which was Alvert Music. (Compl. at ¶¶ 13-14.) Bellmark retained for itself the two sound recordings. In 1997, DM Records secured licenses from both of Isbell's companies to exploit both the musical compositions and sound recordings at issue. (*Id*. at ¶¶ 15-16.) In April of that year, Bellmark filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Texas, which petition was later converted into a Chapter 7 petition. (*Id*. at ¶ 17.) In October of 1999, DM purchased the assets of Bellmark Records from the estate, including the sound recordings of the two songs at issue. (*Id*. at ¶ 18.) Alvert Music has not sought bankruptcy protection. Since that time, DM Records allegedly has proceeded with regard to the two songs in a manner inconsistent with Alvert Music's ownership of the musical composition rights thereto.

In 2002, Isbell filed this lawsuit in the Northern District of Texas. That court transferred the matter to this court. The magistrate judge referred this lawsuit to the bankruptcy court which later issued a report and recommendation that the referral be withdrawn. The undersigned judge agreed, and the matter is now pending before this court.

---

[1] "'Sound recordings' are 'works that result from the fixation of a series of musical, spoken, or other sounds . . . .' A sound recording differs from a musical composition, which captures an artist's music in its written form only." *Emanation Inc. v. Zomba Recording, Inc.*, 72 Fed. Appx. 187, 188 n.2 (5th Cir. 2003) (internal citations omitted).

On January 15, 2004, Isbell executed a "Short Form Copyright Agreement" on behalf of himself and Alvert Music to Bridgeport Music, Inc. (Def.'s Mot. Ex. A.) The assignment provided in part:

> the undersigned does hereby sell, assign, transfer, and set over to Bridgeport Music, Inc., its respective successors and assigns, fifty percent (50%) of his interest now owned or subsequently procured in the universe-wide copyright in and to the following musical composition(s) set forth in Exhibit A attached hereto, and all of the universe-wide right, title, and interest of the undersigned, vested or contingent, therein and thereto, including all claims for infringement of the copyrights whether now or hereafter existing, for the maximum terms of copyright, including any extensions and/or renewals thereof, throughout the universe.

(*Id.*) DM Records contends that this agreement leaves Isbell without standing in this litigation and that Bridgeport is the real party in interest. It also argues that, due to Isbell's dilatory behavior, the proper remedy is to dismiss the action altogether rather than to allow Bridgeport to be substituted under Rule 17. Isbell disagrees, claiming that the assignment does not prevent him from prosecuting this action and arguing that, even if such were the case, the proper remedy would be to substitute Bridgeport as the plaintiff.

## II. LEGAL STANDARD

The claim that a party lacks Article III standing is an attack on a court's subject matter jurisdiction over that party. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986). When a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action pursuant to Rule 12(b)(1). *See Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997). The plaintiff must establish that he has a "personal stake" in the outcome of the litigation "and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). The Supreme Court has held

that Article III standing, at its "irreducible constitutional minimum," requires that a plaintiff demonstrate: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent;" (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly … trace [able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court;" and (3) a substantial likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). The Supreme Court further explained that "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id*. at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)).

"Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986). The court is empowered to make those factual findings necessary to reach a decision as to its constitutional authority to entertain an action. *Id*. The party invoking federal jurisdiction bears the burden of establishing the elements. *Lujan*, 504 U.S. at 561.

### III. DISCUSSION & ANALYSIS

A contract between private parties is to be interpreted so as to effectuate the intent of the parties at the time of their contracting. *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 456 (5th Cir. 2003). An unambiguous contract will be enforced as written. *Interstate Contr. Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005). Where the terms of a contract are

"susceptible to multiple interpretations," ambiguity arises. *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003). Contracts are generally interpreted so as to avoid surplusage and to give effect to each term. *Id*.

The agreement between Isbell and Bridgeport contains two essential, but separate, clauses. The first clause assigns to Bridgeport one-half of Isbell's interest in the recordings listed in Exhibit A to the agreement, and the second clause separately assigns to Bridgeport *all* of Isbell's interest in then- and later-existing causes of action for copyright infringement for the recordings listed in Exhibit A. It is difficult to elaborate further about the meaning of the contract because it is remarkably clear on both points. The contract assigns "all claims for infringement . . . now or hereafter existing."

In this Circuit, ownership of a copyright, and the attendant privileges, and ownership of an existing claim for copyright infringement may be separated by contract. *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 775 (N.D. Tex. 2006); *Seastrunk v. Darwell Integrated Tech., Inc.*, Civ. A. No. 3:05-CV-0531-G, 2005 U.S. Dist. LEXIS 14191, at *11 (July 15, 2005). In the controlling case, *Prather*, a book author brought suit against a book publisher for copyright infringement. In a contract similar to the one in this case, Prather, the author, secured from his publisher both the copyrights he believed to be infringed and, separately, "any and all causes of action that may have heretofore accrued" for infringement thereof. *Prather*, 410 F.2d at 698 n.1. The defendant, another publisher, argued that Prather lacked standing because his publisher had not been joined in the action. The court held that the contract was a "valid assignment of the accrued chose in action for infringement" of the copyrighted material. *Id*. at 699. The court then discussed

multiple authorities that acknowledged the severability of copyright ownership and infringement claims. *Id*. at 700. The court concluded that Prather had standing to challenge the defendants *by virtue of* the assignment of the *causes of action* and not the copyrights themselves. *Id*. "By express language the assignments cover the accrued causes of action for prior infringement." *Id*.

Isbell makes several arguments regarding the meaning of the short form agreement between he and Bridgeport, none of which are convincing in light of the foregoing principles. First, Isbell misconstrues DM Records' standing argument to be that a 50% copyright owner lacks standing to assert a claim of infringement. It is not the assignment of half of Isbell's interest in the copyright that leaves him without standing in this matter, it is the assignment of the entirety of present and future causes of action for infringement of those copyrights that accomplishes that feat. Isbell was free to strike with Bridgeport any bargain he wished, including a bargain that retained for him a right of action against a copyright infringer.

Isbell also argues that the parties intended for him to retain the rights to claims arising out of his remaining one-half interest in the copyrights at issue. Such an argument is belied by the plain and all-encompassing language used in the second clause of the contract. Isbell could have easily assigned "fifty percent (50%) [or any percentage for that matter] of claims for infringement of the copyrights whether now or hereafter existing..." But this was not the language used in the contract. Isbell assigned the entirety of that asset rather than a mere portion of it. Isbell also argues that the assignment is contingent upon the outcome of this litigation. However, no such conditional language is present in, or fairly inferable from, the contract. The works sold by Isbell presumably were sold at a discount to reflect the possibility that DM Records could be adjudged in this action to be the rightful owner thereof.

Finally, Isbell relies on a case from the Second Circuit Court of Appeals for the proposition that the contract between he and Bridgeport could not affect his rights to pursue claims based on infringement of the works at issue. In *Davis v. Blige*, 505 F.3d 90 (2nd Cir. 2007), the court had to decide whether a copyright co-owner can grant a retroactive interest in the copyright to a third party so as to defeat his co-owner's claim against that third party. *Id*. at 101. The court held that such an agreement cannot cut off a co-owner's right of action against copyright infringers because it would trample on the co-owner's property rights without his consent to be bound. *Id*. at 103. While none of that is controversial, it simply does not apply here. Isbell's right of action was not cut off; indeed it still exists, although in the hands of another by virtue of Isbell's having freely bargained it away. This matter has nothing to do with a party unwittingly losing rights due to the actions of a tenant in common. Because Isbell no longer holds the right to pursue the claims here asserted, he lacks a "personal stake" in the action. *Raines*, 521 U.S. at 819. Accordingly, because Isbell lacks standing, his claims must be dismissed.

All that is left is to determine whether Bridgeport should be substituted in Isbell's stead. Rule 17 provides that an action "must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (internal citation removed). The Rule goes on to provide that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

FED. R. CIV. P. 17(a)(3). In addition to the reasonable time requirement embedded in the Rule, "a plaintiff must have a reasonable basis for naming the wrong party to be entitled to ratification, joinder, or substitution." *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006) (citing *Wieburg*, 272 at 308). The mistake must be "understandable," arising out of difficulty in determining under whose name to prosecute the action. *Wieburg*, 272 F.3d at 308.

Though the cases addressing real party in interest concerns under Rule 17 contemplate errors that arise from the outset of litigation, they are nonetheless instructive in this setting. The purpose of Rule 17 is to ensure finality in the judgment and that *res judicata* will protect the defendant from the expense of having twice to defend the same action. *Id*. at 306. Since the date of the contract between Isbell and Bridgeport, DM Records has faced just that risk. It has faced liability in Isbell's lawsuit and the possible additional liability by way of a later claim by Bridgeport as the rightful owner of the copyright infringement claim. DM Records itself learned of the assignment through a search of the Copyright Office files.

Addressing the two prongs of the Rule 17 test, Isbell and Bridgeport meet neither. For the reasons discussed above, Isbell's continued prosecution of this case for four years in his own name was objectively unreasonable. When Isbell's infringement claim was transferred, there was no difficulty in determining who the real party in interest was. As to the reasonable time element of the Rule, it was only after DM Records filed its motion to dismiss that Bridgeport sought to be added to this case. Such an action should have occurred years ago, perhaps as early as 2004 when Isbell assigned the right to bring these claims to Bridgeport. DM Records first raised the standing issue on July 3, 2008 in its Answer after it discovered the assignment in a search of the records in the United States Copyright Office. Isbell offers no reason why he took so long to seek the course of

action he now alternatively seeks. Accordingly, his request to substitute Bridgeport under Rule 17 should be denied.

## IV. CONCLUSION

Having considered the foregoing, the court finds that Alvertis Isbell lacks standing to prosecute this civil action. Accordingly, the court lacks jurisdiction over the subject matter. Additionally, the court finds that allowing Bridgeport Music, Inc. to join the action under Rule 17 would not be justified. The court is, therefore, of the opinion that "Defendant, DM Records, Inc's Motion to Dismiss for Lack of Standing and Brief in Support" (de # 17) should be, and hereby is, GRANTED. Any motions that remain pending are hereby DENIED AS MOOT. The Plaintiff's Complaint is hereby be DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

**SIGNED this the 18th day of December, 2008.**

_/s/ Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE