IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALVERTIS ISBELL d/b/a ALVERT MUSIC, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 4:07-cv-00146 |
| DM RECORDS, INC., | § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING ALL OTHER MOTIONS

Before the court are (1) DM's "Motion to Dismiss, or in the Alternative for Summary Judgment" (dkt. #61), (2) Isbell's "Motion for Rule 11 Sanctions" (dkt. #83), (3) DM's "Motion for Rule 11 Sanctions" (dkt. #84) and "Amended Motion for Rule 11 Sanctions" (dkt. #85), (4) Isbell's request for sanctions against DM (dkt. #88), (5) Isbell's "Motion to Strike Defendant DM Record's Improper Reply [De. 92]" (dkt. #94), (6) DM's "Motion for Leave to File Response in Opposition to Plaintiff's Motion to Strike on December 17, 2010" (dkt. #96), and (7) DM's "Motion to Exceed 5 Page Limit for Reply Brief in Support of It's Motion for Sanctions" (dkt. #97). As explained below, the court treated DM's motion to dismiss as a motion for summary judgment. Having considered that motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the motion should be **DENIED**. All other motions listed above are also **DENIED.**

### I. BACKGROUND

In this civil action, Alvertis Isbell seeks a declaratory judgment that Alvert Music is the

rightful owner of two musical compositions: "Dazzey Duks" and "Whoomp! (There It Is)." The events giving rise to this suit begin with business conducted by two companies, Alvert Music and Bellmark Records, each run by Isbell. Bellmark was purportedly a record company, owning sound recordings. (Complaint ¶ 10.) Alvert Music is, and has been, a music publishing company, which owns musical compositions and not sound recordings. (*Id*. at ¶ 11.)[1]

During the early 1990's, Bellmark entered into agreements to obtain the rights to the musical compositions for "Dazzey Duks" and fifty percent of "Whoomp! (There It Is)" for its affiliated publishing company, which was Alvert Music. (Compl. at ¶¶ 13-14.) Bellmark retained for itself the two sound recordings. In 1997, DM Records secured licenses from both of Isbell's companies to exploit both the musical compositions and sound recordings at issue. (*Id*. at ¶¶ 15-16.) In April of that year, Bellmark filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Texas, which petition was later converted into a Chapter 7 petition. (*Id*. at ¶ 17.) In October of 1999, DM purchased the assets of Bellmark Records from the bankruptcy estate, including the sound recordings of the two songs at issue. (*Id*. at ¶ 18.) Alvert Music has not sought bankruptcy protection. Since that time, DM allegedly has proceeded with regard to the two songs in a manner inconsistent with Alvert Music's ownership of the musical composition rights thereto.

In 2002, Isbell filed this lawsuit in the Northern District of Texas. That court transferred the matter to this court, and the magistrate judge referred it to the bankruptcy court. The

---

[1] "'Sound recordings' are 'works that result from the fixation of a series of musical, spoken, or other sounds . . . .' A sound recording differs from a musical composition, which captures an artist's music in its written form only." *Emanation Inc. v. Zomba Recording, Inc.*, 72 Fed. Appx. 187, 188 n.1 (5th Cir. 2003) (internal citations omitted).

bankruptcy court issued a report and recommendation that the magistrate judge's referral be withdrawn, and the undersigned judge agreed. The matter is now pending before this court. DM filed its motion for summary judgment on July 2, 2010, arguing that Isbell's lawsuit is time-barred by the statute of limitations and the doctrine of laches. DM also seeks attorney's fees. Isbell filed its request for a hearing on July 28, 2010. All other motions were filed in October through December, 2010.

## II. DM'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

DM styled its motion as a "Motion to Dismiss, or in the Alternative for Summary Judgment." While the motion does refer to Rule 12 of the Federal Rules of Civil Procedure, it is not clear on which of that Rule's subsections the motion is based. The court presumes that DM intended a motion to dismiss for failure to state a claim via Rule 12(b)(6). A 12(b)(6) motion is a valid means to raise a statute of limitations defense if the defense clearly appears on the face of the complaint. *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987). However, because DM has presented and relied upon evidence outside the complaint to establish its limitations and laches defenses, the court will treat the motion as a motion for summary judgment under Rule 56. *See* Rule 12(d). And because Isbell's responsive briefing has treated DM's motion as a motion for summary judgment, Isbell will suffer no prejudice from the court's treatment of the motion as such.[2]

---

[2]In addition to arguing that this motion be treated as a motion for summary judgment because it relies on evidence outside the complaint, Isbell also argues that it cannot be a motion to dismiss because DM filed an answer before filing this motion. Rule 12(b) requires that any motion filed under that rule "be made before pleading if a further pleading is permitted." Notwithstanding that rule, courts often "consider a post-answer motion to dismiss as properly

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c)(2). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Discussion and Analysis**

As stated earlier, DM's motion for summary judgment is based on the statute of limitations and the doctrine of laches. DM also seeks attorney fees.

**1. Statute of Limitations**

The statute of limitations for copyright claims is three years. 17 U.S.C. § 507(b). In the Fifth Circuit, the limitations period for a copyright claim begins when the plaintiff knew or had reason to know of the injury upon which the claim is based. *Jordan v. Sony BMG Music Entm't Inc.*, 354 Fed.Appx. 942, 945 (5th Cir. 2009). Summary judgment will not be granted when there

---

before the court as long as the movant also raised the defense of failure to state a claim in his or her answer." *Delhomme v. Caremark RX Inc.*, 232 F.R.D. 573, 575-76 (N.D.Tex. 2005). In its answer, DM raised a failure to state a claim defense, a statute of limitations defense, and a laches defense. DM, therefore, is not barred from offering a post-answer motion to dismiss on those grounds. Nevertheless, as stated above, because the motion relies on evidence outside the complaint, it cannot be treated as a motion to dismiss.

is a material issue of fact about when a limitations period began. *Terrebonne Parish Sch. v. Columbia Gulf Trans.*, 290 F.3d 303, 319 (5th Cir. 2002).

In this case, the parties dispute when Isbell knew or had reason to know that the compositions at stake were being exploited. DM argues that Isbell was on notice of exploitation in November 1997 when the Chapter 7 bankruptcy trustee was appointed and in February 1998 when the trustee began issuing licenses for the compositions to third parties, both events occurring more than three years before Isbell filed this lawsuit on July 3, 2002. Specifically, DM argues that Isbell was on constructive notice of the exploitation by virtue of his being on the trustee's service list. DM also alleges that Isbell was on notice of exploitation in 1997 when DM continued to exploit the compositions even after it ceased paying Isbell for use of the compositions under the parties' 1997 licensing agreement.

In response, Isbell argues that the trustee never licensed the compositions at all; rather, Isbell argues, the trustee merely licensed the master recordings, an interest that is allegedly distinct from an interest in the compositions. Isbell further alleges that the trustee did not know the difference between a sound recording and a musical composition and therefore did not license the compositions. As a result, Isbell argues that the limitations period could not have started with the trustee's actions because the compositions were not being exploited then. Isbell also disputes DM's claim that it ceased paying him in 1997 for its license to use the compositions. Isbell alleges that DM paid him under the license through September, 1999 and therefore DM could not have exploited the compositions before that date.

Ultimately, Isbell claims that he did not know that the compositions were being exploited until the performing rights organization, Broadcast Music Incorporated, ceased paying him

royalties for the compositions on or around March 22, 2001. Thus, he argues, his filing of the lawsuit on July 3, 2002, was well within the three-year statute of limitations.

The court finds that the parties have materially conflicting accounts of when Isbell knew or should have known that the compositions were first being exploited. These conflicting accounts cannot be resolved as a matter of law. Consequently, based on the disputed factual record, DM's motion for summary judgment on statute of limitations grounds is **DENIED**.[3]

## 2. Laches

In order to show that a cause of action is barred by the doctrine of laches, the defendant must prove: (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 344 (5th Cir. 2005).

The circuit courts are split on whether the defense of laches is available in copyright infringement suits. The Fourth Circuit has held that it is not available.[4] The Sixth, Tenth, and Eleventh Circuits have held that it is available but only in extraordinary circumstances.[5] And the

---

[3] Isbell's complaint (dkt. #11) includes a claim for copyright ownership and claims for copyright infringement. The parties dispute the significance of the statute of limitations's effect on Isbell's copyright ownership claim. DM argues that if Isbell's claim of ownership is barred by the statute of limitations then his infringement claims are also barred. Isbell, on the other hand, argues that regardless of whether his claim of ownership is barred, each subsequent act of infringement triggers a new limitations period. Because the court finds that summary judgment based on the statute of limitations is not appropriate, the court need not decide what effect a barred ownership claim would have on Isbell's infringement claims.

[4] *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001).

[5] *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227 (6th Cir. 2007); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); *Peter Letterese & Assoc. v. World Inst. of Scient.*, 533 F.3d 1287 (11th Cir. 2008).

Ninth Circuit has held that it is available like any other defense.[6] The Fifth Circuit has not addressed the issue.

However, even if the doctrine of laches were available in this case, based on the facts it has before it, the court is unable to conclude as a matter of law that Isbell inexcusably delayed in filing this action. Consequently, DM's motion for summary judgment based on the doctrine of laches is **DENIED**.

**3. Attorney's Fees**

The Copyright Act permits a district court, in its discretion, to award attorney's fees to the prevailing party in a copyright action. 17 U.S.C. § 505. Because the court has not yet determined whether DM will prevail in this case, DM's request for attorney's fees is premature and therefore **DENIED**.

### III. MOTIONS FOR SANCTIONS

Both parties have moved the court to impose sanctions on the other under Rule 11 of the Federal Rules of Civil Procedure.

**A. Legal Standard**

Rule 11 authorizes a court to impose sanctions if: (1) a document has been presented for an improper purpose (Rule 11(b)(1)), (2) the claims or defenses of the signer are not supported by existing law or by a good faith argument for an extension or change in existing law (Rule 11(b)(2)), or (3) the allegations and other factual contentions lack evidentiary support and are unlikely to have evidentiary support after a reasonable opportunity for investigation or discovery

---

[6]*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001).

(Rule 11(b)(3)). A violation of any one of these provisions can merit sanctions, i.e. each provision provides an independent basis for sanctions. *F.D.I.C. v. MAXXAM, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008). The central purpose of Rule 11 "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).

**B. Isbell's Rule 11 Motion**

The focus of Isbell's motion (dkt. #83) is limited to the following passage in DM's brief in reply to Isbell's response to DM's motion for summary judgment:

> The Declaration of Alvertis Isbell attached to Alvert's Response as Exhibit A touts Mr. Isbell's experience and "stellar" reputation in the music business purportedly portraying Mr. Isbell as some sort of expert in the subject areas. In fact, however, Mr. Isbell was indicted by a federal grand jury for bank fraud during his time as president of Stax Records. (See, History of Stax article attached hereto as Exhibit L). Al Jackson, associated with Stax, was mysteriously murdered. Also, contrary to Mr. Isbell's sworn testimony that a record company legally cannot own a publishing company, Union Planters Bank, to which Mr. Isbell owed millions of dollars "…foreclose[d] on the publishing arm of Stax" during Mr. Isbell's tenure. Id.

Dkt. #79, pg. 9.

Isbell argues that these allegations violate Rules 11(b)(1) and 11(b)(3) in that they were meant to attack Isbell's character and credibility and they lack evidentiary support. And while Isbell never explicitly cites Rule 11(b)(2), the bar against frivolous legal arguments, some of his arguments appear to be made on that ground as well. Specifically, Isbell argues that DM violated Rule 11 with regards to the following: (1) for failing to mention that while it is true that Isbell was once indicted for bank fraud he was later acquitted on that charge; (2) for making credibility arguments at the summary judgment stage; (3) for attempting to impeach Isbell with an

indictment; (4) for suggesting that Isbell was connected to the murder of Al Jackson despite Isbell having never been accused of anything related to the murder; (5) for mischaracterizing Isbell's statement about record companies owning publishing companies; and (6) for failing to disclose that the money owed to Union Planters Bank was a corporate obligation and not a personal one. Isbell also faults DM for basing its allegations on information it gathered from a timeline found on the website of the Stax Museum of American Soul Music (Isbell was once chairman of Stax Records).

In response, DM emphasizes the brevity of the complained of passage and that it was included only because Isbell had first "opened the door to [his] history in the music business." DM also argues that because Isbell has acknowledged that he was in fact indicted of bank fraud and that Al Jackson was in fact murdered, Rule 11 sanctions are precluded. Finally, DM claims that "[n]o maliciousness was intended or implied" by its drawing the court's attention to these facts, and that it was simply "provid[ing] additional information concerning incidents occurring under Plaintiff's watch at Stax Records." Likewise, in a declaration attached to DM's response, DM President Mark Watson claims that "DM made no representation of any involvement of Bell in a murder" (dkt. #86). As to Isbell's claims about the inaccuracy of DM's statement regarding the Union Planters Bank foreclosure, Watson claims that DM relied on a 1977 opinion issued by the United States Court of Appeals for the Sixth Circuit stating that Isbell secured the loans from the bank.

The court shares Isbell's displeasure with the complained of passage in DM's brief. While it may have been appropriate for DM to briefly respond to the statements in Isbell's declaration about his career accomplishments, the way in which DM did it, by providing the

court with an incomplete picture of the facts, was not appropriate. The court is also troubled by DM's reliance on a page from the internet, without independent inquiry, for making these allegations about Isbell.

The court is particularly displeased with DM's reference to Al Jackson's murder and with DM's and DM President Mark Watson's statements to the court that the reference was not intended to suggest that Isbell might have been involved in the murder. The court finds these explanations disingenuous. There is simply no other plausible reason for mentioning Jackson's "mysterious" murder in the context of which it was mentioned—refuting Isbell's "stellar" reputation—other than to tie Isbell to the "mystery."

The court also notes that DM is mistaken in its assertion that the truth of its statements precludes Rule 11 sanctions. A district court may sanction an attorney under Rule 11 even when a document is well grounded in fact and law if it is objectively ascertainable that the document was filed for an improper purpose. *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003). Thus, while it is true that a district court is not to read an ulterior motive into a document that is well grounded in fact, as pointed out by DM, a court may do so when an improper purpose, such as harassment, is objectively evident.[7]

Nevertheless, despite the court's displeasure with the complained of passage, the court

---

[7] For the proposition that a district court is not to infer an ulterior motive into a document that is well grounded in fact, DM cites *Whitehead v. Food Max of Miss., Inc.*, 277 F.3d 791, 796 (5th Cir. 2002). This citation partially explains DM's mistaken assertion that statements well grounded in fact preclude Rule 11 sanctions. The Fifth Circuit decision cited by DM was overruled en banc in *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796 (5th Cir. 2003), a decision in which the court, relying on long-held Fifth Circuit precedent, clarified that in certain circumstances Rule 11 sanctions can be imposed even when the document filed is well grounded in fact. *Id.* at 805.

finds that the passage does not taint an otherwise appropriate filing such that Rule 11 sanctions would be warranted. Outside of the complained of passage, the remaining portions of DM's eleven page reply contain proper rebuttals to arguments in Isbell's response. Accordingly, Isbell's motion for sanctions (dkt. #83) is **DENIED**.

**C. DM's Rule 11 Motion and Isbell's Request for Sanctions in Response**

Ten days after Isbell filed his motion for Rule 11 sanctions against DM (dkt. #83), DM filed its own motion for Rule 11 sanctions against Isbell (dkts. #84 & 85). Specifically, DM argues that Isbell's response (dkt. #67) to DM's motion for summary judgment contains several factual contentions that lack evidentiary support.

In reply, Isbell argues that nothing in its response was objectionable. Specifically, Isbell asserts that DM's arguments for sanctioning Isbell lack factual support and are based simply on DM's alternative interpretation of the facts. Isbell claims that everything in DM's Rule 11 motion "could have been adequately dealt with in the context of a Reply and much of it was" and that "DM basically reargues its motion for summary judgment in the context of a motion for sanctions." Finally, Isbell requests that the court sanction DM for "filing a frivolous sanctions motion."

The court finds that none of the contentions made by Isbell in his response (dkt. #67) of which DM complains are frivolous. Rule 11 sanctions are generally appropriate only when factual contentions lack evidentiary support. As the Rule 11 Advisory Committee Notes to the 1993 Amendments state, "[the Rule 11] certification is that there is . . . evidentiary support for the allegation, not that the party will prevail with respect to its contention regarding the fact."

Each of Isbell's contentions have at least some evidentiary support. While DM may not agree with how Isbell has characterized certain facts or events, e.g. the meaning of the document recorded with the Copyright Office in January, 2000, a motion for Rule 11 sanctions is not the appropriate place for such disagreement. Rather, DM's brief in reply to Isbell's response was the appropriate place for such disagreements, and indeed, DM's reply brief included many of the same arguments it made in its motion for sanctions. Accordingly, because Isbell's contentions have evidentiary support, DM's motion for Rule 11 sanctions against Isbell (dkts. #84 & 85) is **DENIED**.

In his response (dkt. #88) to DM's motion for sanctions, Isbell argues that DM should be sanctioned because its motion is without merit and was filed only because Isbell had just filed its own motion for sanctions against DM. Isbell does not cite Rule 11 or any other authority for sanctioning DM. Nevertheless, even if Isbell had cited Rule 11, his request does not comply with that rule. Under Rule 11, a motion for sanctions "must be made separately from any other motion" and "must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service [of the motion] . . . ." Rule 11(c)(2). The court finds that Isbell has not complied with these provisions. In addition, while federal courts do have the inherent power to impose sanctions, "the threshold for the use of the inherent power sanction is high" and "may be exercised only if essential to preserve the authority of the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). The court finds that Isbell has not met the high standard required for the court to sanction DM under the court's inherent authority to do so. Consequently, Isbell's request for sanctions (dkt. #88) is **DENIED**.

## IV. REMAINING MOTIONS

Following Isbell's response to DM's motion for sanctions (dkts. #84 & 85), a dispute arose regarding DM's reply to Isbell's response. On November 23, 2010, DM filed a motion (dkt. #90) for an extension of time to file its reply to Isbell's response. The original deadline for DM's reply was November 22, 2010, and DM's motion sought to extend that deadline to November 29, 2010. At 11:59 p.m. on November 29, 2010, DM filed a reply (dkt. #91), the contents of which came to an abrupt end after only three pages. The next day, on November 30, 2010, an assistant to Karl M. Braun, counsel for DM, notified the clerk's office that an incorrect copy of DM's reply had been filed the previous night and that a "corrected" reply would be filed "shortly." DM filed a "corrected" reply on December 1, 2011 (dkt. #92) ("December 1 reply).

On December 6, 2010, Isbell filed a motion to strike DM's December 1 reply (dkt. #94). In support of his motion Isbell argues the following: (1) the December 1 reply was untimely; (2) the December 1 reply exceeded the permissible page limit by one page; and (3) having already filed a reply on November 29, DM's December 1 reply amounts to an impermissible second reply brief.

On December 17, 2010, one day after it was due, DM filed a response in opposition to Isbell's motion to strike (dkt. #95). In its response, DM argues that it relied on the clerk's assurance that it could replace the timely filed but incorrect version of its reply brief and that irregardless, Isbell suffered no prejudice from the incident. Contemporaneous with its response, DM filed two additional documents: (1) a motion for leave to file the response one day late (dkt. #96), and (2) a belated motion to exceed the page limit for its December 1 reply (dkt. #97). Both

of these documents lacked a certificate of conference, the inclusion of which is required under Local Rule CV-7(i). As a result, the clerk's office notified DM on January 03, 2011, that the documents were deficient and must be corrected by one business day. DM has yet to correct these deficiencies.

Isbell is correct in arguing that DM should have sought leave of court to file its December 1 reply two days after it was due. The clerk's office does not have the authority to extend deadlines, nor did the clerk in this case ever claim to have such authority. While there is nothing wrong with replacing a previously filed document with a corrected version of that document, a party should seek leave of court for doing so if a deadline has passed in the interim. Otherwise parties could abuse deadlines by filing an incomplete document before the deadline as a placeholder, touch base with the clerk's office, and then file a completed or completely different document later as a "corrected" version. Nevertheless, the court finds that Isbell has not shown that he was in any way prejudiced by DM's conduct. Accordingly, Isbell's motion to strike DM's December 1 reply (dkt. #94) is **DENIED**.

Regarding DM's motion to file a late response (dkt. #96) and its motion to exceed the page limit (dkt. #97), because both motions lacked certificates of conference, the court is unable to determine if DM has complied with the "Meet and Confer" requirement set forth in Local Rule CV-7(h). Consequently, both motions are **DENIED**. As a result of denying the motion to file a late response (dkt. #96), the court must also strike DM's response to Isbell's motion to strike (dkt. #95). *See* Local Rule CV-7(k). And, as a result of denying the motion to exceed the page limit (dkt. #97), the court did not consider the portions of DM's December 1 reply (dkt. #92) that exceeded the page limit. *See* Local Rule CV-7(l).

## VI. CONCLUSION

The court finds that the parties have materially conflicting accounts of when Isbell knew or should have known that the compositions at stake in this case were first being exploited. The court also finds that the doctrine of laches, if applicable, does not justify summary judgment. Consequently, the court **DENIES** DM's motion for summary judgment (dkt. #61). All other motions are also **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this the 31st day of March, 2011.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE