IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **ALVERTIS ISBELL d/b/a ALVERT MUSIC,** | § § § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 4:07-cv-146 |
| **DM RECORDS, INC.,** | § § § | |
| **Defendant.** | § § | |

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE AND OTHER MOTIONS

The following are pending before the court are:

- Defendant's "Motion to Strike Plaintiff's Motions in Limine Nos. 1–9" (Dkt. #194), Plaintiff's Response thereto (Dkt. #206), and Defendant's Reply (Dkt. #223);

- Plaintiff's "Motion in Limine No. 1" (Dkt. #179), Defendant's Response thereto (Dkt. #197), and Plaintiff's Reply (Dkt. #213);

- Plaintiff's "Motion in Limine No. 2" (Dkt. #180), Defendant's Response thereto (Dkt. #198), and Plaintiff's Reply (Dkt. #214);

- Plaintiff's "Motion in Limine No. 3" (Dkt. #181), Defendant's Response thereto (Dkt. #199), and Plaintiff's Reply (Dkt. #215);

- Plaintiff's "Motion in Limine No. 4" (Dkt. #182), Defendant's Response thereto (Dkt. #200), and Plaintiff's Reply (Dkt. #216);

- Plaintiff's "Motion in Limine No. 5" (Dkt. #183), Defendant's Response thereto (Dkt. #201), and Plaintiff's Reply (Dkt. #217);

- Plaintiff's "Motion in Limine No. 6" (Dkt. #184), Defendant's Response thereto (Dkt. #202), and Plaintiff's Reply (Dkt. #218);

- Plaintiff's "Motion in Limine No. 7" (Dkt. #185), Defendant's Response thereto (Dkt. #203), and Plaintiff's Reply (Dkt. #219);

- Plaintiff's "Motion in Limine No. 8" (Dkt. #186), Defendant's Response thereto (Dkt. #204), and Plaintiff's Reply (Dkt. #220);

- Plaintiff's "Motion in Limine No. 9" (Dkt. #187), Defendant's Response thereto (Dkt. #205), and Plaintiff's Reply (Dkt. #221);

- Plaintiff's "Motion to Limit The Testimony of Defendant's Proposed Expert Samuel J. Fox" (Dkt. #155), Defendant's Response thereto (Dkt. #158), and Plaintiff's Relpy (Dkt. #165);

- Plaintiff's "Motion to Strike DM Records, Inc.'s Rule 26 Disclosure" (Dkt. #208) and Defendant's Response thereto (Dkt. #234); and

- Defendant's "Second Amended Motion for Leave to Allow Mark Watson to Testify as an Expert Witness" (Dkt. #233).

The background of this case has been fully summarized in previous orders issued by this court. *See, e.g.*, Dkt. #109. The court will address the above-referenced motions in turn.

## I. ANALYSIS

### A. DM'S MOTION TO STRIKE

Defendant DM Records, Inc. ("DM") requests that the court strike Plaintiff's motions in limine Nos. 1–9. *See* Dkt. #194. DM argues that Plaintiff Alvertis Isbell d/b/a Alvert Music ("Isbell") did not comply in good faith with the Local Rule CV-7(h) Meet and Confer Requirement. The court shares DM's displeasure with Isbell's last-minute conference with opposing counsel and reminds Isbell's counsel that abiding by the letter and spirit of this court's local rules is not discretionary, but mandatory. Nevertheless, it does appear from the briefing submitted by the parties that the required "meet and confer" did occur albeit in a hurried fashion. Also, because DM has filed responses in opposition to all of Isbell's motions in limine and is therefore not prejudiced by the lack

of a thorough conference with Isbell, the court will not strike Isbell's motions in limine. Accordingly, DM's motion to strike (Dkt. #194) is **DENIED**.

**B. ISBELL'S MOTIONS IN LIMINE**

Isbell has filed with the court nine motions in limine. Having considered the motions in limine, the responses and replies thereto, and the relevant legal principles, the court finds as follows:

1. **DENIED**. Isbell requests that the court exclude any evidence related to the alter ego theory regarding Isbell and Isbell Records, Inc. d/b/a Bellmark Records ("Bellmark"), pursuant to Fed. R. Evid. 402 and 403. The court disagrees. The central issue in this case is whether Bellmark or Isbell had ownership of the copyrights of "Whoomp! (There it is)" and "Dazzey Duks" (together, "Subject Compositions") at the time of the Asset Purchase Agreement between Bellmark and DM. According to the Defendant, as best the court can understand, if Alvertis Isbell d/b/a Alvert Music behaved as the alter ego of Isbell Records, Inc. d/b/a Bellmark Records, Inc., then Isbell's and Alvert Music's assets, including the publishing rights to the disputed music compositions, may have been a part of Bellmark's bankruptcy estate which was purchased by DM Records, Inc. Thus, evidence of a potential alter ego relationship between Isbell and Bellmark is highly probative. Further, Isbell overstates the ruling of the bankruptcy court on the Trustee's motion to dismiss. *See* Dkt. #153, Ex. W. In that motion, the trustee requested that the court dismiss an adversary proceeding by the unsecured creditor's committee against Bellmark insiders, because the trustee determined that the "suit lack[ed] sufficient evidence *at [that] time*." *Id*. (emphasis added). The bankruptcy court's granting the motion for lack of evidence *at that time* does not "explicitly dismiss" all alter ego claims regarding Isbell and Bellmark, as Isbell now argues. *See* Dkt. #179 at 2. Accordingly, Isbell's first motion in limine (Dkt. #179) is **DENIED**.

2. **GRANTED IN PART and DENIED IN PART**. Isbell requests that DM be precluded from introducing character evidence of Alvertis Isbell during the course of this trial, pursuant to Fed. R. Evid. 402, 403, and 404. *See* Dkt. #180. Specifically, Isbell requests that the court exclude any evidence regarding the murder of Al Jackson, Isbell's indictment for bank fraud, and the bankruptcies of Stax Records and Memphis Publishing. In DM's response, it states that it has "no intention of introducing any evidence" regarding Jackson's murder and the bank fraud indictment. Therefore, because this part of the motion is unopposed, the court **GRANTS** Isbell's motion to exclude any references to the Jackson murder and to Isbell's indictment for bank fraud. DM, however, opposes the motion to exclude references to the Stax Records and Memphis Publishing bankruptcies, arguing that they are relevant to rebut Isbell's anticipated references to his "stellar reputation" in

the music industry and good business practices. *See* Dkt. #198, at 7. Presenting evidence of Isbell's prior bad acts as character evidence merely to show "action in conformity therewith" is inadmissible, and Isbell's motion to limit such evidence is **GRANTED**. FED. R. EVID. 404(b). However, Isbell should be forewarned that any attempt to bolster his "stellar reputation" in the music industry or good business practices and record-keeping will "open the door" to allow DM to rebut such claims. Therefore, to the extent that Isbell seeks to limit DM's introduction of evidence that is relevant to an issue other than Isbell's character, it is **DENIED**.

3. **GRANTED IN PART and DENIED IN PART**. Isbell requests that the court exclude any references to possible tax or bankruptcy fraud on the part of Isbell. Isbell argues that DM has not pled a fraud defense, Isbell was not convicted of bankruptcy or tax fraud, and such references are inadmissible under Rules 401, 403, 404(b), and 608. DM argues that it intends to proffer evidence of falsity in these documents only if Isbell offers such documents to support his claims of ownership of the Subject Compositions. Pursuant to Fed. R. Evid. 608(b), DM may question Isbell as a witness regarding any falsity in the tax returns filed by Isbell and in two 1997 license agreements, if they are probative of his truthfulness or untruthfulness. However, DM may not introduce the documents as extrinsic evidence. *U.S. v. Jensen*, 41 F.3d 946, 957 (5th Cir. 1994). If DM seeks to admit the documents as extrinsic evidence, Rule 404(b) applies and they are inadmissible unless relevant to an issue other than the defendant's character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *U.S. v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). Accordingly, the court **GRANTS** Isbell's motion (Dkt. #181) to the extent that DM seeks to introduce the tax returns or license agreements as mere character or propensity evidence. However, should Isbell offer and the court admit into evidence tax returns and license agreements to prove ownership of the Subject Compositions, DM may rebut the credibility of the documents, to the extent such evidence is probative of the ultimate issue in this case—ownership of the Subject Compositions. Therefore, Isbell's motion is **DENIED** to the extent it seeks to limit DM's ability to properly rebut Isbell's proffered evidence regarding ownership of the Subject Compositions.

4. **DENIED**. Isbell requests that the court exclude testimony by Mark Watson and Karl Braun regarding the license agreements entered into by the Chapter 7 Bankruptcy Trustee Mark Weisbart regarding the Subject Compositions. Isbell argues that the agreements license only the master recordings, not the compositions. Isbell also argues that DM's witnesses Watson and Braun are not competent to testify regarding the meaning of the licenses because they lack personal knowledge and have not been qualified as experts. DM argues that testimony by Watson and Braun regarding the licenses is relevant evidence that tends to establish many of DM's affirmative defenses. Isbell's motion (Dkt. #182) is **DENIED**. Because Watson and Braun have not been designated as expert witnesses, should they testify to matters containing

hearsay or outside their personal knowledge, Isbell may timely object during the course of the trial.

5. **GRANTED IN PART and DENIED IN PART**. Isbell moves to exclude testimony by Mark Watson, as a lay witness, regarding prior judicial decisions, contracts to which he was not a party, and DM's accounting practices. DM anticipates that Watson will testify only to those facts within his personal knowledge, as president of DM. Therefore, Isbell's motion (Dkt. #183) is **GRANTED** to the extent that Watson attempts to give improper opinion on prior judicial decisions and on contracts of which he has no personal knowledge. However, Isbell's motion (Dkt. #183) is **DENIED** to the extent Watson anticipates testifying from his personal knowledge of DM's contracts and accounting practices. Should Watson attempt to testify to matters outside of his personal knowledge or give improper opinion, the court will address these concerns upon timely objection during the course of the trial.

6. **GRANTED**. Isbell has requested that the court exclude any references to Bridgeport Music, Inc. and it principals ("Bridgeport") on the grounds that such references are not relevant to this case. DM is opposed to the motion only to the extent that it considers references to Bridgeport relevant on the issue of damages, because Bridgeport has a co-ownership interest in the Subject Compositions. The House Report accompanying 17 U.S.C. § 201(a) states that co-owners of a copyrighted work are to "be treated generally as tenants in common." H.R. Rep. No. 94-1476, at 121 (1976), *cited by Davis v. Bloge*, 505 F.3d 90, 98 (2d Cir. 2007). Because tenants in common have an equal, undivided interest in their property, the Bridgeport's co-ownership in the Subject Compositions is not relevant to the issue of damages, because Isbell, as a co-owner, nevertheless would be entitled to the full amount of damages. Therefore, Isbell's motion (Dkt. #184) is **GRANTED**. Should DM wish to introduce evidence regarding Bridgeport, it may address this issue with the court at the appropriate time outside the presence of the jury.

7. **DENIED**. Isbell requests that the court exclude any testimony that Emergency Music, Inc. may own a percentage of the composition "Whoomp! (There it is)." Because Isbell's argument is based on the facts of the case, not on the Federal Rules of Evidence, Isbell's motion (Dkt. #185) is **DENIED**. Should evidence elicited during trial regarding Emergency Music, Inc. be inconsistent with the Federal Rules of Evidence, Isbell may timely object during the course of the trial.

8. **DENIED**. To the extent that the testimony of Gary Roth, a lay witness, pertains to material outside his personal knowledge or offers improper opinion, the court will address Isbell's concerns upon timely objection during the course of the trial. Isbell's motion (Dkt. #186) is **DENIED**.

9. **DENIED**. To the extent that the testimony of Karl Braun, a lay witness, pertains to

>material outside his personal knowledge or offers improper opinion, the court will address Isbell's concerns upon timely objection during the course of the trial. Isbell's motion (Dkt. #187) is **DENIED**.

**C. ISBELL'S MOTION TO LIMIT THE TESTIMONY OF DM'S PROPOSED EXPERT**

Before the court is Isbell's motion to limit the expert testimony of Samuel J. Fox, an attorney (Dkt. #155). Isbell seeks to exclude paragraphs 5–9 from Fox's expert report, which Isbell argues are a "recitation of Fox's understanding of copyright law." Dkt. #155 at 3. Isbell also seeks to exclude paragraphs 15–19 of Fox's report, which Isbell argues is a discussion of industry custom and practice as well as an interpretation of the Subject Compositions' writers agreements. *See* Dkt. #155 at 4. Because there is "only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). While "merely being a lawyer does not disqualify one as an expert witness," the issue here is whether Fox plans to testify "to purely legal matters or legal matters that involve a question of fact." *Id.* at 672–73. An expert witness may testify regarding industry practice and legal matters that involve a question of fact. It is not admissible, however, for an expert to opine on the governing law and its meaning. Therefore, Isbell's motion to limit testimony is **GRANTED** to the extent Fox's testimony involves "purely legal matters" and a mere recitation of copyright law. *See id*.

However, testimony regarding industry practice that sheds light on the intent of parties to a contract is admissible and relevant testimony. *See Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983) (allowing an expert to testify regarding the industry's customary interpretation of boilerplate contract language). While an expert is not in a better position than the jury to draw conclusions regarding a person's state of mind, *see Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. App'x 534, 541 (5th Cir. 2007), he may

testify to industry custom as it illuminates the parties' intent regarding a contract. Accordingly, Isbell's motion to limit Fox's testimony regarding industry custom as it relates to relevant contracts in this case is **DENIED**. To the extent that Fox discusses the subjective intent of the parties or gives purely legal opinion, Isbell may timely object during the course of the trial.

### D. ISBELL'S MOTION TO STRIKE

Isbell asks the court to strike Mark Watson's disclosure regarding damages and prohibit Watson from testifying as an expert on damages in this case. *See* Dkt. #208. Along with its response to Isbell's motion to strike (Dkt. #234), DM also filed an amended motion for leave to allow Mark Watson to testify as an expert witness (Dkt. #233) on January 27, 2012. In both DM's response and the amended motion, DM argues that Watson is a fact witness, but, in an abundance of caution, requests to designate him as an expert. Such a designation is untimely pursuant to the court's Amended Scheduling Order. Watson may testify as a fact witness, but may not testify as an expert witness. DM's motion (Dkt. #233) is therefore **DENIED**, and Isbell's motion (Dkt. #208) **GRANTED** to the extent that Watson's testimony is in the nature of expert testimony.

### II. CONCLUSION

For the foregoing reasons, the court **DENIES** the following motions: (1) Defendant's Motion to Strike (Dkt. #194); (2) Plaintiff's Motion in Limine No. 1 (Dkt. #179); (3) Plaintiff's Motion in Limine No. 4 (Dkt. #182); (4) Plaintiff's Motion in Limine No. 7 (Dkt. #185); (5) Plaintiff's Motion in Limine No. 8 (Dkt. #186); (6) Plaintiff's Motion in Limine No. 9 (Dkt. #187); and (7) Defendant's Second Amended Motion for Leave to Allow Mark Watson to Testify as an Expert Witness (Dkt. #233).

Alternatively, the following motions are **GRANTED IN PART** and **DENIED IN PART**:

(1) Plaintiff's Motion in Limine No. 2 (Dkt. #180); (2) Plaintiff's Motion in Limine No. 3 (Dkt. #181); (3) Plaintiff's Motion in Limine No. 5 (Dkt. #183); and (4) Plaintiff's Motion to Limit Testimony of DM's Expert (Dkt. #155).

Finally, Plaintiff's Motion in Limine No. 6 (Dkt. #184) and Plaintiff's Motion to Strike (Dkt. #208) are **GRANTED**.

IT IS SO ORDERED.

**SIGNED this the 3rd day of February, 2012.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE