IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **ALVERTIS ISBELL d/b/a ALVERT MUSIC,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 4:07-cv-146 |
| **DM RECORDS, INC.,** | § § § | |
| **Defendant.** | § § | |

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Pending before the court are:

- Defendant's Motion for Summary Judgment (Dkt. #138), Plaintiff's Response thereto (Dkt. # 195), Defendant's Reply (Dkt. #211), and Plaintiff's Surreply (Dkt. #227);

- Plaintiff's Motion for Partial Summary Judgment (Dkt. #153), Defendant's Response thereto (Dkt. #161), and Plaintiff's Reply (Dkt. #166);

- Plaintiff's Motion to Strike Summary Judgment Evidence (Dkt. #169), Defendant's Response thereto (Dkt. #190), and Plaintiff's Reply (Dkt. #209);

- Plaintiff's Motion to Strike Summary Judgment Evidence (Dkt. #196), Defendant's Response thereto (Dkt. #210), and Plaintiff's Reply (Dkt. #226); and

- Plaintiff's Motion for Leave to Supplement Motion for Summary Judgment (Dkt. #191), Defendant's Response thereto (Dkt. #192), and Plaintiff's Reply (Dkt. #207).

The court will address the above-referenced motions in turn.

## I. BACKGROUND

In this civil action, Plaintiff Alvertis Isbell d/b/a/ Alvert Music ("Isbell") seeks a declaratory judgment that Alvert Music is the rightful owner of two musical compositions: "Dazzey Duks" and "Whoomp! (There It Is)" (together, "Subject Compositions"). Isbell also seeks damages for DM's alleged infringement upon his rights in the Subject Compositions. The events giving rise to this suit begin with business conducted by two companies, Alvert Music and Bellmark Records ("Bellmark"), each run by Alvertis Isbell. Bellmark was purportedly a record company, owning sound recordings. Compl. ¶ 10. Alvert Music is, and has been, a music publishing company, which owns musical compositions and not sound recordings. *Id*. at ¶ 11.[1]

During the early 1990's, Bellmark entered into writers agreements to obtain composition rights to the Subject Compositions for its affiliated publishing company, Alvert Music. *Id*. at ¶¶ 13–14. Bellmark retained for itself the two sound recordings. In 1997, DM Records secured licenses from both of Isbell's companies to exploit both the musical compositions and sound recordings at issue. *Id*. at ¶¶ 15–16. In April of that year, Bellmark filed a Chapter 11 bankruptcy petition, which was later converted into a Chapter 7 petition. *Id*. at ¶ 17. In October of 1999, DM purchased the assets of Bellmark from the bankruptcy estate, including all of Bellmark's rights in the Subject Compositions. *Id*. at ¶ 18. Alvert Music has not sought bankruptcy protection. Since that time, DM allegedly has proceeded with regard to the Subject Compositions in a manner inconsistent with Alvert Music's ownership rights thereto. In 2002, Isbell filed this lawsuit in the

---

[1] "'Sound recordings' are 'works that result from the fixation of a series of musical, spoken, or other sounds . . . .' A sound recording differs from a musical composition, which captures an artist's music in its written form only." *Emanation Inc. v. Zomba Recording, Inc.*, 72 Fed. App'x 187, 188 n.1 (5th Cir. 2003) (internal citations omitted).

Northern District of Texas. In 2004, that court transferred the matter to this court, and the magistrate judge referred it to the bankruptcy court in that same year. In 2007, the bankruptcy court issued a report and recommendation that the magistrate judge's referral be withdrawn, and the undersigned judge agreed. Following an appeal of a December 2008 order by this court, this case is now pending once more before this court.

On October 31, 2011, following this court's March 31, 2011 order denying Defendant's motion for summary judgment, this court granted DM leave to file a second motion for summary judgment. DM's second motion for summary judgment argues that the lawsuit is barred by the doctrine of res judicata and 11 U.S.C. § 363(m); that Isbell did not properly acquire ownership of the Subject Compositions under 17 U.S.C. § 204 or § 205; that Isbell should be equitably estopped and/or has waived his right to assert claims of ownership; and, even if Isbell did own the copyrights to the Subject Compositions, Bellmark had an implicit license to exploit the Subject Compositions and that license was transferred to DM. Isbell both responded to DM's motion and filed his own motion for summary judgment, asking the court to find, as a matter of law, that Isbell owns the copyrights to the Subject Compositions and that DM has infringed upon those rights. All other pending motions were filed in August through November of 2011.

## II. MOTIONS TO STRIKE SUMMARY JUDGMENT EVIDENCE

Isbell requests that the court strike two declarations of Mark Watson, President of DM, (Dkts. #138-1, #162-1) from summary judgment evidence. *See* Dkts. #169, #196. Specifically, Isbell argues that large portions of the declarations contain inadmissible hearsay, testimony outside of Watson's personal knowledge, and testimony in violation of Fed. R. Evid. 401 and 403. The court recognizes that "unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence." *Hugh Symons Grp., PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). Neither are "conclusory allegations." *Id.* The court has reviewed the evidence provided in accordance with the Fed. R. Civ. P. 56(c)(4) summary judgment standards, and has considered only those portions of the declarations that "[are] made on personal knowledge [and] set out facts that would be admissible in evidence." Therefore, Isbell's motions to strike (Dkts. #169, #196) are **DENIED**.

### III.  MOTION FOR LEAVE TO SUPPLEMENT

Isbell also requests leave to supplement his motion for summary judgment with a newly-discovered document, a compact disc. *See* Dkt. #191. DM argues that Isbell's motion should be denied due to lack of compliance with Fed. R. Civ. P. 26 and Local Rule CV-7(h). However, Isbell's motion contains a certificate of conference in compliance with Local Rule CV-7(h), alleging that Isbell's counsel conferred with DM's counsel via telephone regarding this motion and DM's counsel opposed the motion.

DM also argues that this document is untimely, unauthenticated, and untrustworthy due to Isbell's having purchased the compact disc from a public internet website, www.amazon.com, after the discovery cutoff period. Addressing the untimeliness argument, this document should have been produced by DM, not Isbell. Thus, the delay in producing this document did not result from a lack of due diligence on Isbell's part. Further, the document is material evidence in this case. Addressing the authentication and untrustworthiness argument, DM objected to Isbell's second request for production of "any and all documents showing each and every album on which the [Subject] Compositions or sound recordings of the [Subject] Compositions appear," arguing that the "information requested [was] equally accessible to the Plaintiff using internet services." *See* Def's

Resp. to Pl.'s Request for Prod. (Dkt. #191-2), ¶ 46. DM may not refuse to produce certain documents, arguing that they are "equally accessible to the Plaintiff using internet services," then later object to Isbell's procuring such documents "using internet services." Accordingly, because Isbell does not add new arguments to his summary judgment motion and because DM has failed to show that it is prejudiced by Isbell's delay in submitting the newly-discovered document, Isbell's motion (Dkt. #191) is **GRANTED**.

### IV.  MOTIONS FOR SUMMARY JUDGMENT

#### A.  LEGAL STANDARD

Summary judgment may be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of the rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24. Therefore, a court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether to grant summary judgment, the court construes all facts and inferences in the light most favorable to the nonmoving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

Both parties bear burdens of producing evidence in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Id.* The nonmoving party must then set forth

"specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249.

**B. ANALYSIS**

### 1. Ownership of the Subject Composition Copyrights

Both Isbell and DM have requested that the court grant summary judgment in their favor regarding ownership of the Subject Composition copyrights. DM argues that there was never any written assignment or transfer of copyright ownership to Isbell in compliance with 17 U.S.C. §§ 204 and 205. D. Mot. Summ. J. (Dkt. #138), at 17, 20. Conversely, Isbell has requested that the court rule as a matter of law that Isbell owns the Subject Composition copyrights. Pl. Mot. Summ. J. (Dkt. #153), at 1. Because there are genuine issues of material fact surrounding ownership of the Subject Composition copyrights, the court **DENIES** both DM and Isbell's motions for summary judgment.

#### a. Writers Agreements

Copyright ownership is shown by: (1) proof of originality and copyrightability, and (2) compliance with the applicable statutory requirements. *See Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403, 407–08 (5th Cir. 2004). Under § 204(a) of the Copyright Act, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204. The writing does not have to contain any particular language or "magic words," but it must show an agreement to transfer copyright. *Lyrick Studios, Inc. v. Big Idea Prods. Inc.*, 420 F.3d 388, 392 (5th Cir. 2005). There are writers agreements transferring interests in the copyrights of both "Dazzy Duks" and "Whoomp! (There it is)" (together, "Writers Agreements"). *See* Dkt. #153-5, #153-6, & #138-3. The Writers

Agreements assign interests in the Subject Composition copyrights to "Bellmark's affiliated publishing company" and "Bellmark's affiliated designee publisher," without mentioning Alvertis Isbell or Alvert Music by name. *See id*.

Isbell argues that, because California law governs the contracts, a "third party beneficiary [may] enforce a contract made for its benefit." *Hess v. Ford Motor Co.*, 41 P.3d 46, 51 (Cal. 2002). "[I]t is not necessary for a third party to be specifically named in a contract." *Galardi Grp. Franchise & Leasing, LLC v. City of El Cajon*, 125 Cal. Rptr. 3d 394, 400 (Cal. Ct. App. 2011). However, the issue in this case is not whether the third-party beneficiary must be named in the contract, but whether there was a third-party beneficiary at all. Thus, Isbell's argument is misplaced.

DM argues that the proper grammatical reading of "Bellmark's affiliated publishing company" and "Bellmark's affiliated designee publisher" assigns the copyrights to an entity *owned* by Bellmark, especially because neither Alvertis Ibell or Alvert Music is mentioned in the Writers Agreements. Isbell, however, argues that this language demonstrates the parties' intent to transfer the copyrights to a company *separate and apart* from Bellmark, especially because other parts of the agreements simply use the name "Bellmark" when intending to convey rights to Bellmark itself. It is well settled that "[t]he language of the contract, unless ambiguous, represents the intentions of the parties." *Kimbell Foods, Inc. v. Republic Nat'l Bank of Dallas*, 557 F.2d 491, 496 (5th Cir. 1977). Because this contract is susceptible to more than one reasonable interpretation, it is ambiguous and extrinsic evidence may be used to determine the parties' intent. *See, e.g., Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 377 (5th Cir. 2008). Here, however, both parties have produced copious amounts of conflicting material evidence of the parties' actions and intent surrounding and following the Writers Agreements. Thus, due to the disputed factual record, summary judgment cannot be granted

on the above-argued grounds.

### b. Alter Ego

Alternatively, DM argues that Bellmark was an alter ego of Isbell, and their commingled assets—including rights in the Subject Compositions—were transferred by Bellmark to DM. Isbell, on the other hand, argues that any alter ego theory was dismissed by the bankruptcy court. During the pendency of Bellmark's bankruptcy in 1997, the bankruptcy court issued an order allowing the creditors committee to "pursue on behalf of the estate, any and all claims of the estate against insiders and affiliates, including without limitations, Bellmark/Life Entertainment, Inc.; Emerge Music, Inc.; Alvertis Isbell (a/k/a Al Bell), and the other Al Bell Companies." *See* Dkt. #153-22. In 1998, however, the court granted the trustee's motion to dismiss the adversary proceeding against Bellmark insiders due to the lack of "sufficient [factual] support at [that] time." *See id*. These bankruptcy court orders do not establish that there was or was not an alter ego relationship between Isbell and his companies. Rather, the orders illuminate the presence of significant factual dispute regarding an alleged alter ego relationship, which should be resolved at trial.

Accordingly, there are genuine disputes as to material fact regarding the ownership of the Subject Composition copyrights at the time of the bankruptcy sale to DM. Due to these fact disputes, the court may not resolve the issue of ownership as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322. Therefore, the court **DENIES** both Isbell and DM's motions for summary judgment on the issue of ownership of the Subject Compositions.

### 2. Copyright Infringement

Isbell also requests that the court find, as a matter of law, that DM infringed upon Isbell's Subject Composition copyrights. In order to prove copyright infringement, a party must prove both

(a) ownership and (b) a violation of the owner's exclusive rights. *Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 576 (E.D. Tex. 2007). Because the court has not granted Isbell's motion for summary judgment on the issue of ownership, the court must also **DENY** Isbell's motion for summary judgment on the issue of copyright infringement.

### 3. Affirmative Defenses

In its motion for summary judgment, DM requests that the court find in its favor as a matter of law on numerous affirmative defenses. For the following reasons, DM's motion on these grounds is **DENIED**.

#### a. Res Judicata

DM argues that the bankruptcy court's order approving the sale of Bellmark's assets or interests in assets "free and clear of all liens, claims, and encumbrances" precludes this action by Isbell. D. Mot. Summ. J. 12. "A valid final adjudication of a claim precludes a second action to that claim or any part of it." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 n.5 (1998) (*citing* RESTATEMENT (SECOND) OF JUDGMENTS §§ 17–19 (1982)). "When a bankruptcy court approves the sale of an asset of the debtor, a person who has notice of the sale cannot later void it on the ground that he is the asset's real owner." *ITOFCA, Inc. v. MegaTrans Logistics*, 322 F.3d 928, 930 (7th Cir. 2003) (holding that res judicata bars a claim when it was clear "on the face of the bankruptcy judge's order" that such property was conveyed in the bankruptcy sale).

DM's argument assumes, however, that the Bellmark estate owned the Subject Compositions. The bankruptcy court itself stated on numerous occasions that the "sale of the [p]urchased [a]ssets is made 'as is, where is' without any representation or warranties concerning the Estate's right, title or interest, if any, in such assets . . . ." *See* Dkt. #1, at 3–4. Further, the bankruptcy court held that

the determination of whether the Subject Compositions are "property of the estate depends on non-bankruptcy law." *Id*. at 12. Accordingly, because DM's argument assumes Bellmark owned the Subject Compositions at the time of the sale, a fact not yet established in this case, the court **DENIES** DM's motion for summary judgment on the grounds of res judicata.

### b. 11 U.S.C. § 363(m)

DM also argues that Isbell's claims are precluded under 11 U.S.C. § 363(m) because DM purchased, in good faith, the rights to the Subject Compositions from the Bellmark bankruptcy estate. D. Mot. Summ. J. 16. It is well settled that 11 U.S.C. § 363(m) protects good faith purchasers of bankruptcy estate assets by precluding claims or appeals by third parties who fail to seek a stay during the bankruptcy proceedings. However, section 363(m) does not apply in this case because it protects good faith purchasers only from suits challenging the validity of the sale of underlying property in a bankruptcy estate. *In re Supertrail Mfg. Co., Inc.*, 383 Fed. App'x 475, 478 (5th Cir. 2010). Section 363(m) does not apply to those assets not included in the bankruptcy estate. Because the central issue in this suit *whether* the Subject Compositions were part of Bellmark's estate, the court **DENIES** DM's motion for summary judgment based on 11 U.S.C. § 363(m).

### c. Equitable Estoppel

DM also requests summary judgment on the basis of equitable estoppel. It argues that Isbell either waived or should be estopped from asserting his claims of infringement because (a) Isbell never asserted a claim of ownership during the bankruptcy proceedings or during the years thereafter, (b) Isbell concealed material facts regarding ownership of the Subject Composition copyrights, and (c) DM reasonably relied on Isbell's actions or inactions when it decided to purchase the assets of Bellmark. D. Mot. Summ. J. (Dkt. #138), at 19–20. "Although there is no on-point circuit authority

articulating the elements of estoppel as a defense to a copyright infringement allegation, a consensus has developed that a copyright defendant must prove four conjunctive elements to establish estoppel in such cases:

> (1) the plaintiff must know the facts of the defendant's infringing conduct;
>
> (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended;
>
> (3) the defendant must be ignorant of the true facts; and
>
> (4) the defendant must rely on the plaintiff's conduct to its injury."

*Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003). "Furthermore, it is accepted that estoppel may be accomplished by a plaintiff's silence and inaction." *Id.* In sum, "the theory of estoppel is based on reasonable reliance." *Id*. at 454.

However, "[e]quitable estoppel is disfavored and should only be applied as needed to avoid injustice." *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 389 (5th Cir. 2001). Further, when determining a party's intent, the question is often fact-specific and, ordinarily, "such issues are inappropriate for summary judgment." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991). With this in mind, the court concludes that at least one element of equitable estoppel cannot be met as a matter of law because Isbell's intent, both at the time of the bankruptcy sale and in the years thereafter, is ambiguous and a question best left to the trier of fact. Additionally, this court has held that there is a genuine factual dispute regarding when Isbell knew or had reason to know that the Subject Compositions at stake were being exploited. *See* Dkt. #109, at 6. Accordingly, because DM is unable to establish the elements of equitable estoppel as a matter of law, the court **DENIES** DM's motion for summary judgment on this affirmative defense.

### d. Implied Nonexclusive License

Finally, DM argues that, even if Isbell owns the Subject Composition copyrights, Bellmark had an implied license to exploit the Subject Compositions since it had been exploiting the compositions for years without objection by Isbell. D. Mot. Summ. J. (Dkt. #138), at 21. Therefore, while Isbell may nevertheless bring his claim for declaratory relief, he is precluded from pursuing his claim for copyright infringement due to Bellmark's implied license, which was transferred to DM in the bankruptcy sale. *Id*. Other circuits have held that an express or implied license is a valid defense to a copyright infringement claim. *See Wilchombe v. Tee Vee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009); *Tasini v. N.Y. Times Co., Inc.*, 206 F.3d 161, 170–71 (2d Cir. 2000); *Effects Assoc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990). "It is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 302 (S.D.N.Y. 2011).

Although a non-exclusive license may be implied from the conduct of the parties, the defendant bears the burden of proving the existence of such a license. *Carson*, 344 F.3d at 451. An implied license arises when: "(a) a person (the licensee) requests the creation of a work, (b) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (c) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)). *See also Nearstar, Inc. v. Waggoner*, 2011 WL 817374, at *3 (E.D. Tex. Mar. 2, 2011). However, the undisputed facts of this case do not at this point satisfy the criteria above for creation of a non-exclusive implied license. DM has produced no evidence alleging that Isbell was the "creator" of the work and "intend[ed] that the licensee-requestor copy

and distribute his work," as is required to establish an implied non-exclusive license. *Id.* Therefore, DM's motion for summary judgment based on the defense of an implied license is **DENIED**.

### 4. Attorneys Fees

Because the court has not granted either party's motion for summary judgment, all requests for the allocation of attorneys fees are **DENIED**.

## V. CONCLUSION

For the reasons set forth above, Isbell's motions to strike summary judgment evidence (Dkts. #169, #196) are **DENIED**; Isbell's motion for leave to supplement its summary judgment motion (Dkt. #191) is **GRANTED**; DM's motion for summary judgment (Dkt. #138) is **DENIED**; and Isbell's motion for summary judgment (Dkt. #153) is **DENIED**.

IT IS SO ORDERED.

**SIGNED this the 3rd day of February, 2012.**

*[Signature: Richard A. Schell]*

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE