IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALVERTIS ISBELL D/B/A ALVERT MUSIC, | § § § | |
| *Plaintiff*, | § § | Case No. 4:07-cv-146 |
| v. | § § | |
| DM RECORDS, INC., | § § | |
| *Defendant.* | § | |

**RESPONSE TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT'S LIMITED REMAND OF DEFENDANT'S RULE 60(b) MOTION**

Pending before the court is Defendant's "Motion for Relief from Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure" (Dkt. 345), Plaintiff's Response (Dkt. 351), Defendant's Reply (Dkt. 352), and Plaintiff's Sur-Reply (Dkt. 353). The United States Court of Appeals for the Fifth Circuit has remanded the motion to this court for the limited purpose of permitting this court to state, in writing, whether it is inclined to deny or grant Defendant's Rule 60(b) Motion (Dkt. 354). For the reasons set forth herein, the court is inclined to **DENY** Defendant's Motion (Dkt. 345).

**I. BACKGROUND**

Plaintiff Alvertis Isbell d/b/a Alvert Music filed this copyright infringement action against Defendant DM Records, Inc. on July 3, 2002 in the United States District Court for the Northern District of Texas. The original complaint sought a declaratory judgment that Alvert Music is the rightful owner of the musical composition copyrights for the songs "Dazzey Duks" by Duice and "Whoomp! (There It Is)" by Tag Team. Plaintiff also sought damages for infringement of those copyrights. On June 4, 2004, the case was transferred by the Northern District of Texas to the United States District Court for the Eastern District of Texas because Defendant claimed that it acquired the composition copyrights at issue when it purchased the

assets of Bellmark Records through a bankruptcy action in the Eastern District of Texas on September 8, 1999. On August 19, 2004, the case was referred to the United States Bankruptcy Court of the Eastern District of Texas. The referral to the Eastern District Bankruptcy Court was subsequently withdrawn on March 21, 2008 (Dkt. 7), on the recommendation of the bankruptcy judge, and the action thereafter continued before this court.

Alvertis Isbell is the founder of Bellmark Records, a record company, and Alvert Music, a music publishing company. Plaintiff maintains that Alvert Music is the rightful owner of the musical composition copyrights at issue based on written agreements between Bellmark Records and the songs' composers. Plaintiff relies on the "Memorandum Agreement" between Bellmark Records and Anthony Johnson and B.T.J., Inc. d/b/a Tony Mercedes Records that assigned a one-third interest in the composition "Dazzey Duks" to "Bellmark's publishing company or designee"[1] and the "Exclusive Producers Agreement" between Bellmark Records and Tag Team Music, Inc. that assigned a fifty-percent interest in the composition copyright for "Whoomp! (There It Is)" to "Bellmark's affiliated designee publisher" to support his claim.[2]

Plaintiff asserts that "Bellmark's affiliated publishing company" and "Bellmark's affiliated designee publisher" refer to Alvert Music. Defendant counters that it is the rightful owner of the composition copyrights through its purchase of Bellmark Records' assets because Alvert Music had not been granted any ownership interest in the composition copyrights through the agreements. Throughout the course of this litigation, Defendant based its argument on a number of different theories and interpretations of the contracts. Ultimately, at trial, Defendant relied on its argument that any entity that may have acquired an ownership interest in the

---

[1] Pl.'s Trial Ex. 137.
[2] Pl.'s Trial Ex. 146.

composition copyrights through these agreements must have been owned by Bellmark Records and therefore DM Records acquired that interest when it purchased Bellmark's assets.

An eleven-day jury trial was held between August 27, 2012 and September 12, 2012. At the close of the evidence, both Plaintiff and Defendant submitted motions for judgment as a matter of law (Dkts. 285, 286, 287). After considering the parties' motions, the evidence presented at trial, and the parties' oral arguments, the court ruled as a matter of law that Plaintiff, doing business as Alvert Music, is the rightful owner of the copyright to the musical compositions for "Whoomp! (There It Is)" and "Dazzey Duks". Further, the court held that DM Records did not obtain an ownership interest in the composition copyrights when it purchased the assets of Bellmark Records.[3] The issue of damages was submitted to the jury, and the jury returned an award in favor of Plaintiff for a total of $2,263,982.28. Defendant now moves for relief from the judgment in this case under Federal Rules of Civil Procedure 60(b)(3) alleging that Plaintiff fraudulently concealed an assignment of his ownership interest in the composition copyrights that divested him of standing to pursue this action and that Plaintiff's failure to reveal the assignment prevented Defendant from fully and fairly presenting its defense. Alternatively, Defendant argues that Plaintiff's alleged lack of standing to pursue the claim justifies relieving it from enforcement of the judgment.

## II. Legal Standard

Federal Rule of Civil Procedure 60(b)(3) explains that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . ." "A party making a Rule 60(b)(3)

---

[3] DM Records did obtain an ownership interest in the composition copyright for "Dazzey Duks" in 2003. Therefore, only damages for infringement between 1999 and 2003 with regard to "Dazzey Duks" were at issue.

motion must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case."[4] "One who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence."[5] Rule 60(b)(3) is "aimed at judgments which were unfairly obtained, not at those which are factually incorrect."[6] A motion under Rule 60(b)(3) cannot be used to re-litigate a case.[7]

Under Rule 60(b)(6), the court may relieve a party from a final judgment for "any other reason that justifies relief." "Relief under [Rule 60(b)(6)] is granted 'only if extraordinary circumstances are present'"[8] and cannot be based on the same grounds as relief under any other section of Rule 60(b).[9]

### III. ANALYSIS

#### a. Defendant's Rule 60(b)(3) Motion

Defendant alleges that Plaintiff never produced a document (the "2006 Security Agreement") that he executed assigning his interest in the composition copyrights at issue to Currency Corporation.[10] Defendant contends that Plaintiff's failure to produce this document amounted to fraud that prevented Defendant from fully and fairly presenting its case because Plaintiff, despite having assigned away his interest in the composition copyrights, testified at his deposition and at trial that he owned the composition copyrights at issue. Plaintiff responds that

---

[4] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).
[5] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).
[6] *Id.*
[7] *United States v. Davison*, 509 F. App'x 330, 332 (5th Cir. 2013) ("It is well established that a party may not use a Rule 60(b) motion as an occasion to relitigate its case." (internal quotation marks omitted)).
[8] *Am. Totalisator Co., Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 815 (5th Cir. 1993).
[9] *See Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 773 (5th Cir. 1995) ("Section (b)(6)'s 'any other reason' language refers to any reason other than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion.").
[10] Dkt. 345-1.

the 2006 Security Agreement simply gives Currency Corporation a security interest in the composition copyrights, [11] and that Defendant never sought a copy of the 2006 Security Agreement in discovery and never asked Plaintiff any questions regarding any security interests related to the composition copyrights. Defendant argues that its Second Request for Production of Documents, request number seven, which asks for "[c]opies of any documents showing that Alvert Music owned the composition copyright to any Composition at issue in this case"[12] required Plaintiff to produce the 2006 Security Agreement. Plaintiff responded to that request by answering "[s]ubject to and without waiving his general objections, Isbell states that all such documents in his possession, custody, or control responsive to this Request have already been produced." Plaintiff argues that the 2006 Security Agreement (1) is not responsive to Defendant's request; (2) was not in Plaintiff's possession; and (3) was at all times available where Defendant ultimately located it – the Arkansas Secretary of State's public website.

"[A] party may engage in rule 60(b)(3) misconduct if he fails to disclose evidence he knows about and the production of such evidence was clearly called for 'by any fair reading' of the discovery order."[13] It is Defendant's contention that the 2006 Security Agreement is responsive to its request because it shows that Plaintiff owned the composition copyrights at issue until November 10, 2006. Plaintiff responds that nothing in the 2006 Security Agreement shows that Plaintiff owned any particular composition copyrights, including the composition copyrights at issue in this action, and the request can only be fairly read as asking for documents that assigned Plaintiff an ownership interest in the composition copyrights.

Defendant has at all times challenged Plaintiff's ownership of the composition copyrights at issue by arguing that the agreements between Bellmark Records and the writers of the

---

[11] Dkt. 351 at 9.
[12] Dkt. 352-1.
[13] *Montgomery v. Hall*, 592 F.2d 278, 279 (5th Cir. 1979).


compositions did not grant any ownership interest in the composition copyrights to Alvert Music. The "Security Agreement" signed by Alvertis Isbell confusingly both "transfers" to Currency Corporation all of Isbell's and Alvert Music's "right, title and interest in the Collateral", which is defined as including "Musical Accounts", which in turn includes "musical compositions", and also simply grants Currency Corporation a security interest in the Collateral. (Dkt. 345-1 at 5). Nevertheless, a document purporting to assign Plaintiff's interest in his "Musical Accounts, Proceeds, Books and Records"[14] or even one assigning all "[p]resently existing and hereafter acquired or arising general intangibles and other personal property (including, without limitation, any and all choses or things in action, rights and remedies with respect to Accounts. . ."[15] would not be evidence that established Plaintiff's ownership interest in the particular composition copyrights at issue. Therefore, a copy of the 2006 Security Agreement is not clearly called for by a fair reading of the discovery request. Further, Plaintiff asserts that he did not possess a copy of the 2006 Security Agreement, but did produce all the records in his possession relating to security interests in the composition copyrights. Rule 34 of the Federal Rules of Civil Procedure only requires production of documents "in the responding party's possession, custody, or control."[16]

    Plaintiff points out that Defendant has not offered any explanation of why it failed to obtain the document until now. Even if Defendant could show by clear and convincing evidence that Plaintiff possessed and withheld a copy of the 2006 Security Agreement, Defendant has not shown by clear and convincing evidence that the failure to produce this document prevented it

---

[14] Dkt. 345-1.
[15] Dkt. 345-2.
[16] Fed. R. Civ. P. 34(a)(1).

from fully and fairly presenting its case or from discovering the document before now.[17] Defendant's allegation that Plaintiff "kept the missing link of the collateral transfer hidden"[18] is unavailing given that the document was and is publicly available and that Plaintiff did produce Exhibit B (Dkt. 345-2) that indicated or suggested Currency Corporation held a security interest in Plaintiff's accounts, general intangibles, negotiable collateral, inventory, equipment, and books.[19] Accordingly, the court is inclined to **DENY** Defendant's Rule 60(b)(3) motion.

    **b. Defendant's Rule 60(b)(6) Motion**

Alternatively, Defendant contends that Plaintiff's lack of standing, even if not fraudulently concealed, provides an independent basis for overturning the judgment under Rule 60(b)(6). While Defendant concedes that relief under Rule 60(b)(6) cannot be based on the same grounds as relief under any other section of Rule 60(b), Defendant reasons that because the 2006 Security Agreement divests Plaintiff of standing to recover on this infringement claim regardless of whether it was fraudulently concealed from Defendant, the court should consider its motion under Rule 60(b)(6) separately from its motion under Rule 60(b)(3).[20] Defendant also concedes that the Fifth Circuit has held that Rule 60(b)(6) does not "extend to considering evidence that could have been presented at trial,"[21] but posits that that ruling should be limited to the facts of that case and "should not apply to a situation in which the evidence addresses the court's lack of

---

[17] *See Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir. 1995) ("When a party is capable of fully and fairly presenting her case notwithstanding 'fraud, misrepresentation, or other misconduct,' the trial court does not err when it denies a Rule 60(b)(3) motion."); s*ee also Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) ("This clause of the Rule provides a grand reservoir of equitable power to do justice in a particular case, but that well is not tapped by a request to present evidence that could have been discovered and presented at trial through the exercise of due diligence." (internal quotation marks omitted)).
[18] Dkt. 345 at 4.
[19] Dkt. 351 at 4. *See also* Dkt. 345 at 8("As Mr. Isbell . . . produced only the Exhibit "B", . . .").
[20] Dkt. 345 at 9 n.1.
[21] Dkt. 345 at 9 (referencing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767 (5th Cir. 1995)).

jurisdiction."[22] Without addressing the merits of Defendant's legal theories, the court is inclined to deny Defendant's Rule 60(b)(6) motion for the reasons set forth below.

Defendant contends that the 2006 Security Agreement divests Plaintiff of standing to pursue an infringement claim against DM Records because it assigns Plaintiff's ownership interest in the composition copyrights at issue to Currency Corporation. Plaintiff first responds that as a third-party infringer, Defendant lacks standing to raise an ownership dispute between two other parties as a defense. Plaintiff maintains that there is no dispute regarding the ownership of the composition copyrights between Plaintiff and Currency Corporation, and that Plaintiff owns all the composition copyrights at issue in this litigation. However, the cases cited by Plaintiff on this point are inapposite because Defendant is not challenging the validity of the transfer between Plaintiff and Currency Corporation. Instead, Defendant is asserting that the 2006 Security Agreement *is* valid to assign Plaintiff's ownership interest to Currency Corporation. Plaintiff contends that the 2006 Security Agreement was intended only to put other parties on notice that a third-party may have a security interest in the collateral described, not to transfer ownership. Alternatively, Plaintiff contends that even if the 2006 Security Agreement was sufficient to transfer Plaintiff's ownership in the composition copyrights to Currency Corporation, Plaintiff still has standing to pursue the infringement claim against Defendant for any acts of infringement that occurred before 2006.

The 2006 Security Agreement contains the following assignment in paragraph 2: "Borrower irrevocably assigns, transfers, and sets over to Lender all of Borrower's right, title, and interest in the Collateral." "Collateral" is defined in paragraph 1.a. as "(i) Musical

---

[22] Dkt. 345 at 9.

Accounts,[23] Proceeds,[24] and Books and Records;[25] (ii) all property (acquired by Borrower at any time) similar to that described hereinabove in this section 1 a; and (iii) all proceeds from the sale or other disposition of the Collateral described hereinabove in this section 1.a." While the Security Agreement gives the Lender the option "to attach a partial list of musical compositions in which Borrower has rights in a schedule of works" in paragraph 1.b., no list is attached.

Defendant points out that Exhibit C-1 of the 2006 Security Agreement in paragraph 1.i. defines "Loan Documents" as

> notes under the Line of Credit, the assignments of Collateral, together with any other related, written agreements, whether current or future. the [sic] Line of Credit and all its exhibits; this Security Agreement; all past, present, and future notes; *the assignments of Collateral whether past, present, or future*; together with any other past, present, or future written documents related to the Line of Credit (either executed by Borrower if requested by Lender or fully executed by both parties).[26]

Defendant's contention is that the definition of "Loan Documents" in the 2006 Security Agreement expresses the parties' intention to assign the collateral listed in the separately-filed "Exhibit B," including "[p]resently existing and hereafter acquired or arising general intangibles and other personal property (including, without limitation, any and all choses or things in action.

---

[23] "Musical Accounts" is defined as "all Borrower's Accounts related in any way to the Sources." "Accounts" is defined as "all rights; whether to receive income or otherwise; whether now existing or hereafter arising; whether now owned or hereafter earned, inherited, purchased, assigned or otherwise acquired. Accounts include without limitation copyrights, rights, rights to payments, rights to royalty income, accounts, chattel papers, contract rights, instruments, deposit accounts, and documents." "Sources" is defined as "BROADCAST MUSIC, INC. (BMI) UNIVERSAL MUSIC PUBLISHING GROUP/IRING MUSIC, INC/RONDOR MUSIC INTERNATIONAL All other sources (i) of rights related to musical compositions (including the rights to receive income) (ii) who Lender has contacted or will contact to request an assignment of (or any information regarding) any of Borrower's rights."
[24] "Proceeds" is defined as "all proceeds (both cash and noncash) of and accessions to all of the properties and interests in the Collateral." Dkt. 345-1
[25] "Books and Records" is defined as "all books, records, and documents (including without limitation computer tapes, disks and programs, and other things upon which or in which such book, records, or documents are stored or maintained), together with all equipment used in connection with the use, preparation or maintenance of such books, records or documents relating to any of the Collateral."
[26] (emphasis added) (Dkt. 345-1 at 5).

. . .)" to Currency Corporation.[27] However, the 2006 Security Agreement only purports to assign "the Collateral," which is specifically defined within the 2006 Security Agreement in paragraph 1.a. Neither paragraph 2 (Assignment of Collateral) nor paragraph 1.a. (Definition of "Collateral") refer to the definition of "Loan Documents" in paragraph 1.i. Further, while the definition of "Loan Documents" does purport to include "the *assignments* of Collateral whether past, present, or future*,*" nothing in "Exhibit B" purports to be an assignment of collateral, only a description of collateral, so it not obvious that paragraph 1.i. in the 2006 Security Agreement would include the collateral described in Exhibit B in its assignment. Paragraph 6(f) of the 2006 Security Agreement (Representations and Warranties) also clarifies that "Borrower covenants, warrants, and represents . . . the Loan Documents are valid and binding obligations of Borrower and create a perfected, first priority security interest enforceable against the Collateral." Nothing in the 2006 Security Agreement specifically incorporates the description of collateral from Exhibit B. Even if the court were inclined to agree with Defendant that Plaintiff assigned his interest in the composition copyright to Currency Corporation via the 2006 Security Agreement, the assignment does not alter the fact that Defendant never acquired an ownership interest in the composition copyrights and therefore remains liable for the acts of infringement that lead to the judgment in this case. Defendant has not put forth any evidence to show that an extraordinary circumstance exists that would justify relief under Rule 60(b)(6).

### IV. CONCLUSION

For the reasons set forth above, the court is inclined to **DENY** Defendant's Motion for Relief from Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (Dkt. 345).

**SIGNED this the 5th day of May, 2014.**

---

[27] Dkt. 345-2 at 4.

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE